Rainsford J. WINSLOW, Plaintiff,

v.

Ronald L. LEHR, Edythe S. Miller, Andra Schmidt, 1 through 200 are designated as John/Jane Does, yet unknown, Defendants.

Civ. A. No. 86–K–1202.

United States District Court,
D. Colorado.

Oct. 28, 1986.

Rainsford J. Winslow, Fort Morgan, Colo., pro se.

Valerie J. McNevin-Petersen, Asst. Atty. Gen., Denver, Colo., for defendants.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

On June 16, 1986 the plaintiff filed another *pro se* complaint replete with a mixture of incongruous elements. He cites various criminal and civil statutes and proclaims repeatedly that he is entitled to "A common Law Jury." Among the allegations, he alludes to 42 U.S.C. § 1983 and that, I determine, seems to be the jurisdictional basis for his complaint. In the event a lawyer or judge violates any rule or statute or any of the plaintiff's rights, he states he will "convert the John/Jane Doe Defendant to the actual person making the violation,...."

The named defendants have moved to dismiss for failure to state a claim upon which relief can be granted. The named defendants are the commissioners of the Public Utilities Commission of the State of Colorado. The plaintiff claims that the commissioners conspired to deprive him of his rights by prohibiting him from representing the Morgan Heights Utility Company while it was a Colorado corporation in a case brought before the commission. The

plaintiff is not an attorney licensed to practice law in the State of Colorado.

The plaintiff thereafter caused the Morgan Heights Utility Company to dissolve so that he could appear *pro se* before the commission. This, he says, deprived him of the right to have the "liability protection which a corporation affords, plus other tax advantages." Once the utility company was dissolved, the commission allowed the plaintiff to proceed. He did and on October 14, 1986 a hearing officer for the commission rendered his recommended decision.

The other claim is a bit more difficult to ascertain. It is couched in terms of malicious prosecution and abuse of process. Apparently, when the other disputant in the case before the commission failed to answer interrogatories, the commission caused an order or notice to be issued which advised the disputant that he could answer or object to the interrogatories. This advice, plaintiff asserts, constitutes the unauthorized practice of law and resulted in his being compelled to defend himself and his company without due process of law. Precisely how instruction and advice as to its procedures by a state agency constitutes the unauthorized practice of law is left to the vagaries of our imaginations.

The defendants succinctly observe that plaintiff has failed to exhaust the administrative remedies afforded to him by the commission itself and by the State of Colorado. Indeed, there is no finality of judgment in the state proceeding as this opinion is being written. Other grounds are obvious as well and require no further discussion. Plaintiff has filed a complaint during the pendency of an agency proceeding alleging wrongs which, even if accepted as true for the purposes of this motion as indeed they are, do not constitute violations of 42 U.S.C. § 1983.

The plaintiff asserts that motions are not permitted in this case because he has filed a "common law action." Thus, so it is asserted only a jury of twelve can decide the case. He opines that the Seventh Amendment to the United States Constitution grants this ineluctable right.

To quote a brief declaration of the obvious,

... there is no doubt whatever that a trial court's dismissal of a complaint, which is not well founded, in that a cause of action is not well laid, is not violative of the seventh amendment.

*Allen v. Biggs*, 62 F.Supp. 229, 232 (E.D. Pa.1945).

The rationale for excepting cases or issues which have been culled by the federal rules from submission to the jury is that

There is not an absolute right to have every issue raised submitted to the jury. The Constitution does not compel this. It calls for the submission of bona fide fact questions to the jury ...

*DeBry v. Transamerica Corp.*, 601 F.2d 480 (10th Cir.1979) (concerning jury instructions and dismissal of certain claims).

The strict delineation between judge and juror functions was a definite attribute of the common law. The federal rules' dismissal, summary judgment, directed verdict, judgment n.o.v., etc., provisions only codify the scope of the common law right to trial by jury.

The power of the judge to pass upon questions of law is just as much an essential part of the process of trial by jury at common law guaranteed by the seventh amendment, as is the power of the jury to pass upon questions of fact.

*Deiderich v. American News Co.*, 128 F.2d 144, 146 (10th Cir.1942).

The Supreme Court has provided the most considered exegesis of the relationship between procedural rules resulting in dismissal and a litigant's seventh amendment right to trial by jury in *Baltimore and Caroline Line, Inc. v. Redman*, 295 U.S. 654, 55 S.Ct. 890, 79 L.Ed. 1636 (1935). At the core of this opinion is the recognition that, even at common law as codified in the seventh amendment, the right to jury trial was qualified by the judge's right to decide questions of law.

The aim of the Amendment ... is to preserve the substance of the common

law right of trial by jury, as distinguished from mere matters of form or procedure, and particularly *to retain the common law distinction between the province of the court and that of the jury, whereby ... issues of law are to be resolved by the court and issues of fact are to be determined by the jury under appropriate instructions by the court.* 295 U.S. at 657, 55 S.Ct. at 891, 79 L.Ed. at 1638. The specific procedural device used by the trial court in that case was similar to a modern judgment n.o.v. This is distinct from the present procedural dismissal device, but the Court's rationale is analogous. (The case involved the trial court's express reservation of its ruling on motions to dismiss and for directed verdict pending the jury's return of a verdict. The motions were based on alleged insufficiency of evidence, a question of law for the court. After the jury returned its verdict the court considered the motions and held the evidence sufficient.) In the context of that procedural device, the Court held that a judge's dismissing a case as a matter of law, thereby taking ultimate decision away from the jury, is not in derogation of a litigant's Seventh Amendment rights. I quote at length from that opinion

At common law there was a well established practice of reserving questions of law arising during trials by jury and of taking verdicts subject to the ultimate ruling on the questions reserved.... Fragmentary references to the origin and basis of the practice indicate that it came to be supported on the theory that it gave better opportunity for considered rulings, made new trials less frequent, and commanded such general approval that parties litigant assented to its application as a matter of course. But whatever may have been its origin or theoretical basis, *it undoubtedly was well established when the 7th Amendment was adopted, and therefore must be regarded as a part of the common law rules to which resort must be had in testing and measuring the right to trial by jury as preserved and protected by that amendment.*

295 U.S. at 659–60, 55 S.Ct. at 892–93, 79 L.Ed. at 1639–40.

It is a fundamental axiom of our system that juries determine facts and judges determine law. Historians take note of some practices which existed in this country in the early stages of its development. In Colorado, for example, before a recognized government was able to function, law was developed by so-called miners' courts. When justices of the peace populated the countryside and there was little possibility of obtaining judicial review, some states, including Colorado, had statutes which said that the jury would determine questions of law as well as fact. This enlargement of a jury's power was an addition to common law, not a part of it. The statutory addition was made on the common sense basis that the chances of having a juror who could read enough to announce a statute were just as good or better than finding a justice of the peace who could. Even then, however, cases of importance were decided by circuit judges who impaneled juries, instructed them and discharged them. As at common law, the power of the judge to set aside a jury's verdict was recognized and exercised. The idea of a bunch of good ol' boys sitting around "doin' justice" was as fanciful then as it is absurd now.

The motion to dismiss is granted. Each party shall pay his or her own costs herein.